FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.

NOTICE: Motions for reconsideration must be physically received in
our clerk's office within ten days of the date of decision to be deemed
timely filed.

https://www.gaappeals.us/rules-1-8/

October 17, 2023

# In the Court of Appeals of Georgia

A23A1607. DOE et al v. BROADY et al.

BARNES, Presiding Judge.

Janet Doe and her daughter Jane Doe[1] sued Flynn D. Broady, Jr., in his individual and official capacities as the District Attorney of Cobb County, seeking a judgment declaring Georgia's Living Infants Fairness and Equality (LIFE) Act[2] unconstitutional and an injunction prohibiting its enforcement. The District Attorney moved to dismiss the action for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), contending that the plaintiffs did not have standing to prospectively challenge the Act on constitutional grounds because they were not pregnant when the

---

[1] Jane Doe is a separate plaintiff in the lawsuit, but she is a minor child who sued by and through her mother and next friend, Janet Doe.

[2] Ga. L. 2019, p. 711, § 1 (codified in various sections of Titles 1, 16, 19, 31, and 48 of the Official Code of Georgia Annotated).

lawsuit was filed. The trial court granted the motion to dismiss, resulting in this appeal. For the reasons discussed below, we affirm.

> A motion brought under OCGA § 9-11-12 (b) (1) asserts the defense of lack of jurisdiction over the subject matter. When a defendant challenges a plaintiff's standing by bringing an OCGA § 9-11-12 (b) (1) motion, the plaintiff bears the burden of establishing that jurisdiction exists. A motion to dismiss for lack of subject-matter jurisdiction can allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint or a factual challenge, which requires consideration of evidence beyond the face of the complaint. And we review de novo a trial court's grant of a motion to dismiss due to lack of subject-matter jurisdiction. We also construe the pleadings in the light most favorable to the nonmoving party with any doubts resolved in that party's favor.

(Citations, punctuation and footnotes omitted.) *Stillwell v. Topa Ins. Co.*, 363 Ga. App. 126, 127-128 (871 SE2d 8) (2022). Guided by these principles, we turn to the record in the present case.

The record reflects that on June 29, 2022, the plaintiffs filed in the Superior Court of Cobb County a complaint challenging the constitutionality of the LIFE Act. Among other provisions, the Act prohibits the abortion of an "unborn child . . . determined . . . to have a detectable human heartbeat," subject to certain enumerated

2

exceptions. OCGA § 16-12-141 (b). See Ga. L. 2019, p. 711, § 4.[3] The plaintiffs

alleged that the Act was unconstitutional under the Georgia Constitution because it

violated their rights to privacy, equal protection, freedom of conscience, and freedom

of religion by interfering with their choice whether to take a pregnancy to full term

or obtain an abortion. See Ga. Const. of 1983, Art. 1, Sec. 1, Pars. I-IV. The plaintiffs

sought a declaration that the LIFE Act was unconstitutional on its face and temporary

and permanent injunctions prohibiting the District Attorney from enforcing the Act.

---

[3] The LIFE Act designated its effective date as January 1, 2020. See Ga. L. 2019, p. 719, § 15. Before that date, a lawsuit was filed in the United States District Court for the Northern District of Georgia challenging the constitutionality of the Act, and the district court ruled that certain sections, including the section prohibiting abortion upon the detection of a fetal heartbeat, were unconstitutional and enjoined their enforcement. See *SisterSong Women of Color Reproductive Justice Collective v. Kemp*, 472 FSupp3d 1297 (N. D. Ga. 2020). However, the United States Court of Appeals for the Eleventh Circuit reversed the district court's order after the Supreme Court of the United States issued its opinion in *Dobbs v. Jackson Women's Health Organization*, __ U. S. __ (142 SCt 2228, 213 LE2d 545) (2022), which overruled *Roe v. Wade*, 410 U.S. 113 (93 SCt 705, 35 LE2d 147 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (112 SCt 2791, 120 LE2d 674) (1992), and held that there is no federal constitutional right to an abortion. See *SisterSong Women of Color Reproductive Justice Collective v. Governor of Ga.*, 40 F4th 1320 (11th Cir. 2022).

Separately, a lawsuit challenging the LIFE Act was filed in the Superior Court of Fulton County, and the superior court entered an order determining that particular sections, including the section restricting abortions after detection of a fetal heartbeat, were void ab initio and enjoined their enforcement. See *SisterSong Women of Color Reproductive Justice Collective v. State of Ga.*, No. 2022 CV367796 (Fulton County Super. Ct. Nov. 15, 2022). But in an order entered on November 23, 2022, the Supreme Court of Georgia granted the State of Georgia's emergency petition for supersedeas, staying the superior court's order. See *State of Ga. v. SisterSong Women of Color Reproductive Justice Collective*, No. S23M0358 (Ga. Nov. 23, 2022). The appeal in the Fulton County case remains pending before the Georgia Supreme Court as of the date of the instant opinion. See *State of Ga. v. SisterSong Women of Color Reproductive Justice Collective*, No. S23A0421 (docketed Dec. 8, 2022).

According to the complaint, Plaintiff Jane Doe "is a prepubescent female minor child" who is the daughter of Janet Doe and "is a potential member of a class of minors that may seek termination of an unplanned pregnancy without parental consent." The complaint further alleged that Plaintiff Janet Doe "is a female currently capable of procreation should she decide to become pregnant and is seeking relief upon her status as a resident female of Georgia." The complaint acknowledged that neither plaintiff "is currently pregnant."

The District Attorney answered that the plaintiffs were not entitled to the requested relief and moved to dismiss the action for lack of subject matter jurisdiction, contending that the plaintiffs did not have standing to prospectively challenge the constitutionality of the LIFE Act. The District Attorney argued that a plaintiff who is not pregnant when her lawsuit is filed lacks standing to constitutionally challenge the prospective enforcement of an abortion law against her because she cannot demonstrate that she has suffered an injury that is concrete and particularized.

In response to the motion to dismiss, Janet Doe filed an affidavit attesting that she is in her "middle 30's and married," is the mother of two children (including Jane Doe), and is "capable of becoming pregnant and bearing a child to term." Janet Doe

further attested that the LIFE Act would interfere with her choice whether to terminate a pregnancy, should she become pregnant in the future, and that the Act would impede her ability to plan any pregnancy she "may wish to have while [she] remain[s] pre-menopausal." Additionally, Janet Doe attested that the Act would infringe upon Jane Doe's ability to terminate any unwanted pregnancy without parental approval.

The trial court granted the District Attorney's motion to dismiss, concluding that the plaintiffs failed to show that they had suffered an injury in fact and thus did not have standing to prospectively challenge the constitutionality of the LIFE Act. The trial court noted that neither plaintiff was pregnant when the complaint was filed and that Janet Doe's affidavit "did not attest that she or her daughter have affirmatively decided to become pregnant." Consequently, the trial court found that the plaintiffs failed to show that "they are imminently about to be impacted by the Act because of pregnancy"; that any injury to them was "conjectural and hypothetical"; and that they were "similarly situated as other Cobb County citizens who might be impacted by the Act, but that [such a] generalized grievance [did] not invoke standing."

5

The plaintiffs now appeal from the trial court's dismissal order, arguing that the trial court erred in determining that they lacked standing. We discern no error by the trial court.

"Under Georgia law, a trial court lacks subject matter jurisdiction to address the merits of a constitutional challenge to a statute brought by a party who does not have standing to bring that challenge." *Black Voters Matter Fund v. Kemp*, 313 Ga. 375, 380 (1) (870 SE2d 430) (2022). See *New Cingular Wireless PCS v. Ga. Dept. of Revenue*, 303 Ga. 468, 470 (1) (813 SE2d 388) (2018) (noting that the question of standing is a threshold jurisdictional issue that must addressed before consideration of the merits). "As a general rule, standing must be determined at the time at which the plaintiff's complaint is filed in order to place an actual case or controversy within the purview of the court. In other words, the plaintiff must be able to show that he or she has been harmed at the time that the complaint is filed alleging a constitutional violation." (Citations and punctuation omitted.) *Perdue v. Lake*, 282 Ga. 348, 348 (1) (647 SE2d 6) (2007).

When challenging the constitutionality of a statute, "the plaintiff must show an actual, individualized injury." *Sons of Confederate Veterans v. Henry County Bd. of*

*Commrs.*, 315 Ga. 39, 39 (880 SE2d 168) (2022).[4] See id. at 54 (2) (c), n. 13 (pointing out that the Georgia Supreme Court has "long held that Georgia courts may not decide the constitutionality of statutes absent an individualized injury to the plaintiff" and collecting cases); *Manlove v. Unified Govt. of Athens-Clarke County*, 285 Ga. 637, 638 (680 SE2d 405) (2009) ("As a general rule, a litigant has standing to challenge the constitutionality of a law only if the law has an adverse impact on that litigant's own rights.") (citation and punctuation omitted).[5] The plaintiff's injury must be "both concrete and particularized and actual or imminent, not conjectural or hypothetical." (Citations and punctuation omitted.) *Black Voters Matter Fund*, 313 Ga. at 382 (1) (a).

---

[4] The Georgia Supreme Court has not resolved whether the particularized injury requirement for constitutional challenges to statutes is itself of "constitutional dimension" or could be abrogated by statute by the General Assembly. See *Sons of Confederate Veterans*, 315 Ga. at 39, 54 (c) (2), n. 13. That question need not be resolved in this case because the plaintiffs do not contend that the General Assembly sought to abrogate the particularized injury requirement for cases pertaining to the LIFE Act.

[5] Under Georgia's law of standing, outside of the context where a plaintiff is challenging the constitutionality of a statute, a plaintiff's "injury need not always be individualized; sometimes it can be a generalized grievance shared by community members, especially other residents, taxpayers, voters, or citizens." *Sons of Confederate Veterans*, 315 Ga. at 39. Here, however, the plaintiffs assert only constitutional claims challenging the LIFE Act and therefore must show an individualized injury to establish standing. Id.
Additionally, we note that this case does not involve the issue of third-party standing of medical providers to raise the rights of their patients, such as in cases where physicians who provide abortions seek to challenge the constitutionality of a state abortion law on their patients' behalf. See *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434-436 (1) (651 SE2d 36) (2007).

Applying this standard, we conclude that the plaintiffs failed to show that they have suffered an actual, particularized injury resulting from the LIFE Act. The LIFE Act regulates abortion, but neither plaintiff was pregnant when the complaint was filed; indeed, the complaint makes clear that Jane Doe was not of childbearing age when the lawsuit commenced. Because the plaintiffs were not pregnant when the suit was filed, any alleged harm to them as a result of the LIFE Act was merely conjectural and hypothetical rather than concrete and particularized. At some undetermined point in the future the plaintiffs might become pregnant and want to obtain an abortion, and the LIFE Act might prevent them from doing so, but those outcomes are a matter of speculation at this point. "A court cannot judge the constitutionality of a law based on speculation and conjecture of such an unspecified future harm as is alleged in the case at bar," and the plaintiffs therefore have failed to establish standing to pursue their constitutional challenge. *Manlove*, 285 Ga. at 638. See *Black Voters Matter Fund*, 313 Ga. at 382 (1) (a) ( noting that "[a] litigant has standing to challenge a law" only if she can "establish a threat of injury in fact that is actual and imminent") (citation and punctuation omitted). See generally *Cheeks v. Miller*, 262 Ga. 687, 688 (425 SE2d 278) (1993) ("A controversy is justiciable when it is definite and concrete, rather than being hypothetical, abstract,

8

academic, or moot."); *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999) (explaining that courts have "no province to determine whether or not a statute, in the abstract, is valid, or to give advisory opinions") (citations and punctuation omitted).

Federal courts, including the United States Supreme Court, have reached the same conclusion. See *Roe v. Wade*, 410 U.S. 113, 128 (IV) (C) (93 SCt 705, 35 LE2d 147 (1973) (noting that married couple sought standing to challenge state abortion laws on the ground that the wife "might become pregnant because of possible failure of contraceptive measures, and at that time in the future . . . might want an abortion that might then be illegal," and concluding that couple's alleged injury that "rest[ed] on possible future contraceptive failure, possible future pregnancy, possible future unpreparedness for parenthood, and possible future impairment of health" was insufficient to confer standing), overruled on other grounds by *Dobbs v. Jackson Women's Health Organization*, __ U. S. __ (142 SCt 2228, 213 LE2d 545) (2022); *Satanic Temple v. Parson*, 735 Fed. Appx. 900, 901-902 (8th Cir. 2018) (per curiam) (concluding that plaintiff who "was not pregnant at the date the action was initiated" lacked standing to prospectively challenge state abortion law); *Abele v. Markle*, 452 F2d 1121, 1124-1125 (2d Cir. 1971) (concluding that nonpregnant plaintiffs lacked

9

standing to challenge state abortion law because "any threat of harm to them [was] remote and hypothetical" in that it was "possible that they [would] not become pregnant or that if they [did become pregnant] they [would], upon further reflection, decide for other reasons against an abortion"); *Crossen v. Breckenridge*, 446 F2d 833, 839 (III) (6th Cir. 1971) (concluding that plaintiff did not have standing to challenge abortion law, where "[n]o injury is alleged, actual or threatened, other than the hypothetical possibility that she may be denied an abortion should she become pregnant"); *McCormack v. Hiedeman*, No. 4:11-CV-00433-BLW, 2012 WL 256026, at *3 (1) (A), 2012 U.S. Dist. LEXIS 10226, at * 8 (1) (A) (D. Idaho Jan. 27, 2012) ("It appears the overwhelming majority of courts to consider this issue — and most importantly the Supreme Court — have viewed nonpregnancy as fatal to standing."). See generally *McInnes-Misenor v. Me. Medical Center*, 211 FSupp2d 256, 260 (III) (D. Me. 2002) (noting that "in cases in which plaintiffs have sought injunctive relief to prevent a harm that necessarily would befall only a pregnant individual, non-pregnancy generally has been viewed as fatal to standing," and collecting cases to that effect), aff'd on other grounds by *McInnis-Misenor v. Me. Medical Center*, 319

F3d 63 (1st Cir. 2003). And while we are not bound by federal standing law,[6] our Supreme Court, in discussing the fact that a plaintiff must have an actual, particularized injury to bring a constitutional challenge to a statute, has explained that "[t]his kind of individualized injury appears similar to the injury-in-fact required federally." *Sons of Confederate Veterans*, 315 Ga. at 54 (2) (c), n. 13.

In sum, we conclude that the trial court properly determined that the plaintiffs lacked standing to challenge the LIFE Act. We therefore affirm the trial court's dismissal of the suit for lack of subject matter jurisdiction.

*Judgment affirmed. Land and Watkins, JJ., concur*.

---

[6] See *Sons of Confederate Veterans*, 315 Ga. at 45 (2) (a), n. 4 (cautioning that "Georgia courts should apply principles of federal standing only to the extent they are (1) following binding precedents of [the Georgia Supreme Court] or (2) considering other federal precedent as persuasive authority only to the extent that those federal decisions actually were guided by the same language, history, and context as that of the relevant state provision") (citations and punctuation omitted).