**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A1243. GWINNETT COUNTY v. STATE OF GEORGIA.

McFADDEN, Presiding Judge.

Gwinnett County appeals from the trial court's summary judgment order dismissing its declaratory judgment action on the ground that the county has failed to show a justiciable controversy. Contrary to the trial court's ruling, the county has shown a justiciable controversy about whether it must perform various functions as directed by an allegedly unconstitutional senate bill. So we reverse.

1. *Facts and procedural posture*

Gwinnett County filed a complaint for declaratory judgment and injunctive relief against the State of Georgia, alleging that Senate Bill 333 ("SB 333"), which provided for the creation of the City of Mulberry in Gwinnett County, is

unconstitutional and thus placed the county in a position of uncertainty by requiring the county to hold and fund a November 2024 election for city council members, to participate in a two-year transition of services to the city, and to refrain from exercising its zoning authority in the city limits. The complaint requested that the trial court declare that SB 333 is unconstitutional and that therefore the county is not required to hold the city council election, is not required to participate in the two-year transition of services, and is not prohibited from zoning in the city limits. The State of Georgia answered, denying material allegations of the complaint.

The county and the state subsequently filed a joint stipulation of facts which provided, among other things, that Gwinnett County had already conducted and paid for the November 2024 city council election; that SB 333 requires Gwinnett County to participate in the transition of services and government functions to the city from January 1, 2025 until December 31, 2026; that Gwinnett County will continue expending money and resources providing existing services for the city residents and for otherwise participating in the two-year transition period; that SB 333 prohibits Gwinnett County from making any zoning modifications to property located within the boundaries of the city during the two-year transition; and that Gwinnett County

2

will be asked to renegotiate several of its intergovernmental agreements to account for the city.

The state moved to dismiss the complaint for failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and improper venue. After a hearing, the trial court granted the state's motion, citing the parties' stipulation of facts. The court found that the county had failed to show a justiciable controversy which would authorize declaratory judgment because the county was not in a position of uncertainty. Specifically, the court found that any uncertainty regarding the November 2024 election was moot since the election had already occurred. With regard to the provision of services during the two-year transition period, the court emphasized the portion of the stipulated facts stating that county will expend money and resources providing *existing* services, and concluded that the county was therefore not in a position of uncertainty because it would be providing services regardless of the validity of SB 333. Finally, the court found no uncertainty regarding zoning because the county had not alleged or cited evidence of a specific zoning ordinance it intended to enact or modify. This appeal followed.

2. *Standard of review*

As noted above, "[t]he trial court, in ruling on the motion, considered [the] stipulation of facts filed by the parties, a matter outside the pleadings. Consequently, the motion was . . . treated as one for summary judgment, and we review the order appealed as a [grant] of a motion for summary judgment[, rather than a dismissal for failure to state a claim]." *Bd. of Nat. Res. of Ga. v. Monroe County*, 252 Ga. App. 555, 556 (556 SE2d 834) (2001).

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Keng v. Keng*, 375 Ga. App. 797, 799 (2) (917 SE2d 810) (2025) (citation and punctuation omitted).

3. *Declaratory judgment*

Gwinnett County asserts that the trial court erred in finding that it had made no showing of a justiciable controversy which could authorize a declaratory judgment. We agree.

> The Declaratory Judgment Act gives superior courts, "in cases of actual controversy," the power "to declare rights and other legal relations of any interested party petitioning for such declaration." OCGA § 9-4-2 (a). The purpose of the act "is to settle and afford relief

4

from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. Our Supreme Court has defined "actual controversy" as a justiciable controversy where there are interested parties asserting adverse claims on an accrued set of facts. For a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other. Moreover, declaratory relief is proper only where the party seeking such relief faces some uncertainty or insecurity as to rights, status, or legal relations, upon which its future conduct depends.

*Hughes v. Gwinnett County*, 375 Ga. App. 774, 778 (3) (917 SE2d 762) (2025) (citation and punctuation omitted).

Here, Gwinnett County does not challenge the trial court's finding that uncertainty as to the 2024 election is moot since it has already occurred. Indeed, "[t]here can be no actual or justiciable controversy if the questions in the case have become moot. A petition for declaratory judgment is moot when the relief, if granted, would have no practical effect on the underlying controversy." *Knox v. State of Ga.*, 316 Ga. 426, 427-428 (888 SE2d 497) (2023) (citation and punctuation omitted).

The county does, however, challenge the trial court's findings that the county faces no uncertainty regarding to SB 333's requirements that the county provide certain services and refrain from exercising its zoning authority during the two-year

transition period. The county argues that the trial court's rationale in finding no uncertainty misunderstood and misconstrued the county's claims. We agree.

Contrary to the trial court's findings, the county's alleged uncertainty is not premised on whether the services it must provide to residents of the newly created city already exist or whether there is a specific zoning ordinance in question. Rather, the county's uncertainty is based on the various mandates expressly imposed upon it by the allegedly unconstitutional SB 333. As set forth in the stipulated facts, those mandates require that the county participate in the two-year transition of services and government functions to the city, expending money and resources in doing so; that the county refrain from making any zoning modifications within the city limits during the transition period; and that the county renegotiate several of its intergovernmental agreements to account for the city. Gwinnett County claims that because SB 333 is unconstitutional, the City of Mulberry was void at its inception, the various mandates directing future conduct of the county related to that invalid city are likewise invalid, and the county is thus in a position of uncertainty as to whether it should follow those invalid mandates and continue to facilitate the creation and maturation of an allegedly invalid city. This uncertainty authorizes a declaratory judgment clarifying the county's

6

future conduct based on whether SB 333 is unconstitutional, as claimed by the county, or whether it is constitutional, as claimed by the state.

Certainly, "[m]ere disagreement about the abstract meaning or validity of a statute or ordinance does not constitute an actual controversy within the meaning of the Declaratory Judgment Act." *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 879-880 (838 SE2d 834) (2020) (citation and punctuation). But this is not a case in which there is merely a disagreement about the abstract meaning of SB 333 or in which the county is simply seeking a declaration that SB 333 is unconstitutional without any clarification of its own future conduct. Compare *Hughes*, supra at 778 (3) (no justiciable controversy where individual plaintiff did not seek declaratory judgment clarifying his own future conduct and instead "the only declaratory judgment he sought was for SB 333 to be declared unconstitutional and void"); *Cobb County v. Floam*, 319 Ga. 89, 100-101 (2) (901 SE2d 512) (2024) (no justiciable controversy where plaintiffs challenging constitutionality of amendment passed by county board of commissioners did not face uncertainty concerning their own future conduct and instead only sought guidance about future conduct of the defendant). Rather, the county seeks direction as to whether it must expend its

resources transferring services and government functions away from the county and to the city, whether it may zone within the city boundaries, and whether it must renegotiate intergovernmental agreements to include the city as expressly mandated by SB 333. See generally *Cherokee County v. City of Holly Springs*, 284 Ga. 298, 300 (1) (667 SE2d 78) (2008) (recognizing "a county's interest in the determination of its boundaries and the duties and obligations that naturally flow therefrom"). "An action against the State of Georgia in the superior court for a declaratory judgment is the appropriate litigation mechanism for [judicial] review [of statutes], and enforcement of unconstitutional statutes may be enjoined." *Knox*, supra at 427. Here, Gwinnett County's declaratory judgment action seeking judicial review of SB 333 sufficiently alleges a justiciable controversy. The Declaratory Judgment "Act is to be liberally construed and administered, [and] the text of the Act also plainly states that its purpose 'is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.' OCGA § 9-4-1." *Cobb County*, supra at 96 (2) (punctuation omitted). The trial court erred in finding that as a matter of law Gwinnett County was not entitled to declaratory relief from uncertainty with respect

to SB 333's impact on its rights, status, and legal relations. So the order of dismissal must be reversed.

4. *Right for any reason*

The state argues that we should affirm the trial court's dismissal order as right for any reason by finding that Gwinnett County has not shown a waiver of sovereign immunity and by holding that a county may never dispute the constitutionality of a state act. See *Stanford v. City of Atlanta*, 361 Ga. App. 248, 254 (3) (863 SE2d 721) (2021) (appellate courts may apply the right-for-any-reason rule when reviewing certain judgments de novo). We disagree.

Contrary to the state's sovereign immunity argument, the trial court correctly found that sovereign immunity had been waived in this declaratory judgment case. Article I, Section II, Paragraph V (a) of the Georgia Constitution of 1983 provides that "[l]egislative acts in violation of this Constitution or the Constitution of the United States are void, and the judiciary shall so declare them." And "Paragraph V (b) (1) of [that article and section] waives sovereign immunity for [superior court] actions seeking declaratory relief for alleged acts of [the state] that are 'outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the

Constitution of the United States.'" *Kuhlman v. State*, 317 Ga. 232, 235 (2) (892 S.E.2d 753) (2023). In this case, the county's action claiming that SB 333 violates various state constitutional provisions and other state laws "comes within the constitutional waiver of sovereign immunity in Article I, Section II, Paragraph V (b) (1)." Id. So the state's sovereign immunity argument provides no basis for affirming the dismissal as right for any reason.

As for the state's argument that we should affirm the dismissal by holding that a county may never dispute the constitutionality of a state act, we have discretion in whether to apply the right for any reason rule and decline to do so here. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002). We are a court for correction of errors and generally will not review such an issue that has not been ruled on below. See *Owensby v. Williams*, 355 Ga. App. 695, 699 (b) (843 SE2d 899) (2020) (absent definitive ruling by trial court on an issue, there is nothing to review on appeal). "Our Supreme Court has stated that the tenet that the appellate courts do not rule on issues not ruled on by the trial courts preserves the appellate courts' jurisdiction and delineates the proper roles of the courts at the trial and appellate levels." *Stanford*, supra (citation and punctuation omitted). The state's argument asks

us to make what would be a broad, and apparently novel, decision on an issue that has not been addressed by the trial court. We decline to decide this issue in the first instance without the benefit of findings and a ruling from the trial court. See *Perry v. Emory Healthcare Servs. Mgmt.*, 374 Ga. App. 41, 47-48 (911 SE2d 229) (2025) (declining to address issues not ruled on by trial court under right for any reason rule).

*Judgment reversed. Hodges, J., concurs. Pipkin, J., concurs in judgment only*.